# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MELODY J. MALES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-16-549-SPS** |
| | ) | |
| **COMMISSIONER of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Melody J. Males requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. [1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1]Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born April 10, 1960, and was fifty-five years old at the time of the administrative hearing (Tr. 151). She completed the eleventh grade, and has worked as a short order cook, and cashier/checker (Tr. 179, 335). The claimant alleges inability to work since April 4, 2013, due to lower back pain (Tr. 334).

**Procedural History**

On May 14, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ B.D. Crutchfield conducted an administrative hearing determined that the claimant was not disabled in a written opinion dated April 18, 2016 (Tr. 127-140). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at steps four and five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform the full range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, she could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, and sit/stand and walk six hours in an eight-hour workday with normal breaks (Tr. 132). The ALJ thus

concluded that the claimant could return to her past relevant work as a cashier checker as generally performed. Alternatively, the ALJ found that there was other work the claimant could perform in the economy, *i. e.* bench assembler, small parts assembler, and bottling line attendant (Tr. 139).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly weigh the medical evidence, including treating physician opinions, her mental impairments, and her cirrhosis; and (ii) failing to include all her limitations in the RFC, which affected the jobs identified. The Court finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairment of spine disorder, along with the nonsevere impairments of anxiety, depression, colon problems, and hypertension (Tr. 129). The record reflects that the claimant reported an on-the-job back injury after bending over to pick something up in April 2013. She had previously complained of low back pain prior to this injury (Tr. 445). An MRI of the lumbar spine revealed degenerative changes with varying degrees of central canal stenosis and neural foraminal narrowing primarily involving the L3-S1 levels (Tr. 454-455).

Records related to her worker's compensation claim reflect findings from three physicians. First, Dr. Lonnie Litchfield examined the claimant on May 22, 2013 and assessed her with an acute traumatic injury to the lumbar spine resulting in radiculopathy due to anatomical abnormalities consistent with disc protrusions of the L2/3, L3/4, L4/5, and/or L5/S1, causing compression and irritation of the L5 and L1 nerve roots and bilateral neural foraminal narrowing (Tr. 459). He opined that the claimant was temporarily totally

disabled effective April 5, 2013 and would remain so for an undetermined period of time (Tr. 459). Dr. Allen S. Fielding then examined the claimant on June 19 and June 22, 2013, and it was his opinion that the claimant "may have sustained a lumbar strain as a result of her work activities" but that it was "nothing more significant this this" (Tr. 463). He interpreted the lumbar MRI as revealing chronic degenerative changes, and no acute findings, and he further believed that she had reached maximum medical improvement (Tr. 463-464). He stated that she could return to her work as a cashier without any restrictions (Tr. 464). Dr. Fielding also sent the claimant to a neurologist who conducted EMG and NCV testing, which were all within normal limits (Tr. 471). Finally, Dr. Randall Hendricks evaluated the claimant on August 21, 2013, concluding that the claimant's major cause was the work-related injury, but noting that she required treatment for back pain that he believed was chronic in nature (Tr. 476-479).

The claimant had a fall in June 2014, and a subsequent x-ray of the sacrum and coccyx revealed some deformity of the lower sacrum that appeared healed, as well as degenerative changes in the lower lumbar spine (Tr. 504, 585).

On September 2, 2014, Dr. Wojciech L. Dulowski, M.D., conducted a physical examination of the claimant. He noted that she walked with some antalgic gait to the left side, and had difficulty walking on heels and tiptoes due to pain, but had good grip strength. Additionally, he found that the claimant's alignment of the cervical, thoracic, and lumbar spines were normal, that the lumbar spine was very tender with spasms of paravertebral muscles, that passive movement was painful on extreme but normal, and that all passive movement in the upper and lower extremities was normal (Tr. 495-496). He assessed her

with history of degenerative changes of the lumbar spine with central canal stenosis and neural foraminal narrowing primarily involving L3-S1, chronic pain syndrome, and tobacco abuse (Tr. 496).

The claimant was regularly treated by Dr. William Anderson, whose notes reflect consistent complaints of low back pain and chronic pain syndrome dating back to 2011, and indicate she was unable to work in April 2013 following her injury (Tr. 659-674). A later treatment note from June 2014 reflects the claimant's back pain was a chronic problem (Tr. 6 73).

On January 21, 2015, the claimant presented for intake at CREOKS, and was assessed with anxiety state not otherwise specified (NOS), and major depressive affective disorder, recurrent episode, moderate (Tr. 637).

On April 9, 2015, general practitioner Mark Rogow, M.D. completed a mental RFC assessment for the claimant, indicating that she had no useful ability to function on a sustained basis for full-time work in the areas of, *inter alia*: maintain attention and concentration for extended period; perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically-based symptoms; interact appropriately with the general public; and work without deterioration or decompensation causing exacerbation of symptoms or adaptive behaviors (Tr. 571). He indicated that her symptoms were serious, or reflected a serious impairment in social, occupational, or school functioning (Tr. 577). Dr. Rogow also completed a physical RFC assessment, indicating that the claimant could not frequently lift any weight, and could only occasionally lift less

than ten pounds; that she could stand/walk a total of one hour, and sit a total of three hours; that she was limited in her lower extremities; and that she would need five or more breaks per day (Tr. 572). Additionally, he indicated that she must lay in a supine position for a total of four hours per day, and could perform work activities for one hour per day (Tr. 573). In support, he referred to "obvious acute distress, crying, lumbar disc disease, rectal bleeding" (Tr. 573). He also noted further postural and environmental limitations (Tr. 574). When asked to describe clinical and laboratory findings, he cited to the claimant's severe depression, that was expected to be exacerbated with even minimal stress (Tr. 574). He completed another form, an abbreviated physical RFC assessment, in which he indicated that the claimant could not sit for six hours in an eight-hour workday, could not sit/stand/walk for a combination of eight hours, could not work part-time for more than ten hours, required more unscheduled breaks, and had significant limitations in the ability to reach/push/pull (Tr. 575). As to the reach/push/pull, he wrote that such actions might "transmit forces to lower back causing intolerable exacerbation of low back pain (Tr. 575).

Treatment notes from EASTAR Health System indicate that the claimant had been in geriatric psychiatric care for depression in August 2015, but was transferred to acute care following the development of an infection (Tr. 765). She was noted to have muscle wasting and signs of malnutrition, as well as a depressed affect (Tr. 765). She was diagnosed with pyelonephritis/small perinephric abscess, cirrhosis, and depression, and was discharged back to psychiatric care (Tr. 766).

On March 29, 2016, the claimant apparently suffered another fall, and an x-ray of the lumbar spine revealed mild disc disease at the level of L5-S1 and degenerative changes in the form of osteophytes (Tr. 783).

State reviewing physician Dr. David Bailey determined that the claimant could perform the full range of light work with no additional limitations (Tr. 200-201). On reconsideration, the claimant was not found to have a severe mental health impairment (Tr. 222), and Dr. James Metcalf agreed that the claimant could perform the full range of light work (Tr. 223-224).

In her written opinion, the ALJ summarized the claimant's testimony as well as the medical evidence and various opinions by the treating, consultative, and reviewing physicians. As to the opinion evidence at step four, the ALJ gave great weight to Dr. Dulowski's findings, which confirmed her back pain and spine impairment but that the treating doctors had used medication to treat the claimant (Tr. 133). She noted Dr. Anderson's treatment history with the claimant, as well as the three varying opinions from the worker's compensation physicians, Dr. Litchfield, Dr. Fielding, and Dr. Hendricks (Tr. 134). She gave little weight to the claimant's receipt of worker's compensation benefits, pointing out the disparate opinion and differing guidelines, then stating that where the weight of the opinion evidence did not yield consistent findings, she accorded greatest weight to the state reviewing physicians (Tr. 135). She then noted that Dr. Rogow's opinion was the only one in the record that was "wholly inconsistent" with the state reviewing physicians, and accorded it little to no weight (Tr. 135). In support, she stated that the medical evidence in the record included treatment notes from two different

facilities where both treatment providers had similar treatment records but which widely varied from Dr. Rogow's findings and his treatment notes, which included a notation that the claimant's back pain persisted but was well-controlled with medication (Tr. 135-136). She then noted that he was a general practice physician who saw the claimant five times in less than a year and did not make a mental health diagnosis until the end of that time, and his own treatment notes stated that medication controlled the claimant's pain. She therefore concluded that the opinions of the state reviewing physicians and consultative physicians were substantial evidence which contradicted Dr. Rogow's opinion and allowed her to reject it (Tr. 136). She also further noted the lack of treatment history for the claimant's nonsevere mental impairment, finding that the record did not support the lack of functioning alleged, that medications had controlled her pain, and there was no longitudinal record of mental health treatment (Tr. 137).

The claimant first contends that the ALJ failed to properly analyze Dr. Rogow's opinion, noting that he, along with Dr. Litchfield and Dr. Anderson stated that the claimant could not work. The Court finds that the ALJ did not, however, commit any error in her analysis. As Dr. Rogow was a treating physician, the ALJ was required to give his medical opinion controlling weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Even if the ALJ did conclude that his opinion was not entitled to controlling weight, she was nevertheless required to determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.*

at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. Those factors are: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decided to reject any of Dr. Rogow's medical opinions entirely, she was required to "give specific, legitimate reasons for doing so[,]" *id.* at 1301, so it would be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The Court finds that the ALJ's analysis of Dr. Rogow's opinion, set forth above, was sufficient. The ALJ considered his opinion in accordance with the appropriate standards and properly concluded it was entitled to little weight. In fact, the ALJ noted and fully discussed the findings of all the claimant's various treating, consultative, and reviewing physicians, including Dr. Rogow. Indeed, Dr. Rogow's opinion contradicted every other physician who treated her, examined her, or reviewed her records, all of which was fully discussed by the ALJ. Furthermore, Dr. Litchfield's and Dr. Anderson's "supporting" findings both applied to the same month the claimant injured her back in April 2013, and applied only to that time period. There is nothing in the record to support a

finding that even a temporary finding of disability in April 2013 could meet the durational requirement in the regulations. The ALJ thus did not commit error in failing to include any limitations imposed by Dr. Rogow in the claimant's RFC. *See, e. g., Best-Willie v. Colvin*, 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The ALJ's opinion was therefore sufficiently clear for the Court to determine the weight he gave to Dr. Rogow's opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted].

The claimant also contends that the ALJ failed to account for all of her nonsevere impairments, including her mental impairments, but the Court finds that the ALJ did not commit any error in her analysis. As set forth above, she noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, including all the evidence related to her back pain and nonsevere mental impairments at step four (Tr. 14). Although the ALJ did not mention the one-time finding of cirrhosis that arose in August 2015 (Tr. 766), this is not reversible error. The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). The ALJ's treatment of the medical evidence in this case meets these standards. The Court finds that the ALJ specifically noted the various

findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record, *and still concluded* that she could perform sedentary work. When all the evidence is taken into account, the conclusion that the claimant could perform sedentary work is thus supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

The claimant last asserts that she can neither return to her past relevant work nor perform the jobs identified at step five. The claimant contends that the ALJ failed to properly account for the demands of her past relevant work at phase two, and thus her conclusion that she could perform her past relevant work was not properly supported by evidence. With regard to phase two, the Court finds the ALJ's questioning of the claimant at the administrative hearing and the VE's testimony about the exertional and skill levels of the jobs was sufficient to establish the demands of the claimant's past work (Tr. 163-165, 179). *See, e. g., Westbrook v. Massanari*, 26 Fed. Appx. 897, 903 (10th Cir. 2002) (finding that remand under *Winfrey* is appropriate only when the record is "devoid of even any mention of the demands of past relevant work[.]") [citation omitted] [unpublished opinion]. Even assuming *arguendo* the demands of the claimant's past work were insufficiently developed, the ALJ determined the claimant could return to her past relevant work as a cashier-checker *as it was generally performed in the national economy*. This

finding makes any further inquiry into the actual demands of the jobs unnecessary. *See,*
*e.g., Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1050 (10th Cir.
1993) (noting that the ALJ shall consider "the claimant's ability to perform either . . . '[t]he
actual functional demands and job duties of a particular past relevant job; or . . . [t]he
functional demands and job duties . . . as generally required by employers throughout the
national economy.'"), *quoting* Soc. Sec. Rul. 82-61, 1982 WL 31387, at *1. *See also Wise*
*v. Barnhart*, 42 Fed. Appx. 331, 333 (10th Cir. 2002) ("[T]he issue is not whether claimant
can return to her actual past job, but to the type of work she performed in the past.")
[unpublished opinion], *citing Andrade*, 985 F.2d at 1051. Further, the ALJ made her own
phase-three findings that the claimant's RFC did not preclude her performance of past work
a cashier-checker (Tr. 138). Although the ALJ clearly relied on the VE's testimony for her
phase-three findings, *see Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) ("An 'ALJ
may rely on information supplied by the VE at step four.'"), *quoting Winfrey*, 92 F.3d at
1025, she did not "delegate the analysis to the [VE]." *Id.* ("The ALJ did not delegate the
analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in
support of his own findings at phases two and three of the analysis."). Thus, the ALJ's
analysis of the claimant's past relevant work satisfied the requirements set forth in *Winfrey*.

The claimant's last contention is that she is unable to perform the jobs identified at
step five because she cannot perform the RFC set forth by the ALJ. But as discussed above,
the Court finds that substantial evidence supports the ALJ's determination that the claimant
can perform less than the full range of light work. The final contention is therefore without
merit. Accordingly, the decision of the Commissioner should be AFFIRMED.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 27th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**